UNITED STATES of America,
Plaintiff,

v.

J. D. MULLINS, Jr., and Emily J. Mullins, Defendants, Counterclaimants and Claimants against Third-Party Defendants.

Civ. A. No. 995.

United States District Court
W. D. Virginia,
Abingdon Division.

Sept. 23, 1964.

H. Garnett Scott, Asst. U. S. Atty., Roanoke, Va., for plaintiff.

H. Clyde Pearson, Roanoke, Va., for defendants.

MICHIE, District Judge.

Plaintiff, the United States of America, seeks to recover from the defendants, J. B. Mullins, Jr. and Emily J. Mullins (hereinafter referred to as "the Mullins"), the balance due on a note executed by the Tri-States Automotive Warehouse, Inc. (hereinafter referred to as "Tri-States") on January 15, 1962 and guaranteed by the defendants on that same date. The note and guaranty were assigned to the United States on September 17, 1962 pursuant to the provisions of the Small Business Act (15 U.S.C. § 636). The United States initiated this action on October 20, 1962, alleging Tri-States' default and seeking judgment against the Mullins for the sum of $92,-647.40 plus interest. The Mullins, replying, filed cross-claims against the Dominion National Bank of Bristol (hereinafter referred to as "Bank"), the original loan agent, and Lawrence Warehouses, Inc. (hereinafter sometimes referred to as "Lawrence"), a corporation which has served as warehouseman under the inventory financing arrangement securing the note, as well as a counterclaim against the United States. In an opinion dated April 14, 1964, D.C., 228 F.Supp. 748, this court dismissed both the counterclaim and the cross-claims on jurisdictional grounds. The United States then moved for summary judgment on its original claim against the Mullins as guarantors of the note executed by Tri-States.

In their answer the Mullins, by way of defense, alleged that they were:

"Released and discharged from the alleged guaranty due to the wrongful and unlawful interference with the principal debtor, thereby making it impossible to liquidate the indebt-

edness in that the plaintiff, through its agency, Small Business Administration, Dominion National Bank, and Lawrence Warehouses, Incorporated, acting jointly and in concert with each other, prematurely closed the business of Tri-States Automotive Warehouse, Inc., the principal debtor, on August 14, 1962, while the loan in question was in current status and all payments had been paid, thereby wrongfully and unlawfully converted and froze the assets of the principal debtor, prohibiting the principal debtor from liquidating the obligation sued upon."

This, it was urged before this court, was an alteration of the original agreement which released the guarantors. In their answer, the defendants further alleged the illegality of the original guarantee and plaintiff's actions under it claiming that they violated the provisions of the Small Business Act. However, neither pleadings nor brief further particularize these allegations and the court is forced to the conclusion that this defense has been abandoned.

The facts viewed most favorably to the defendants are as follows: Tri-States was a corporation engaged in the sale of automotive parts in Virginia, Tennessee, North Carolina and Kentucky. The Mullins were very nearly the sole shareholders of Tri-States. On January 15, 1962 the corporation executed the note which underlies this suit in favor of the Bank, borrowing $100,000 at six percent interest to be repaid in monthly installments of $1112 on the sixteenth of each month. The note provided for the purchase by the Small Business Administration of 60% of the loan on disbursement. As security Tri-States gave a deed of trust on all its inventories, personal property and fixtures and executed an assignment of its accounts receivable. It also undertook to operate a bonded warehouse program under a procedure set up through Lawrence Warehouses, Inc. Under this program Tri-States agreed to pledge personal property or commodities of the value of not less than 125% of the indebtedness owed to the Bank. These goods were to be kept in a warehouse operated by Lawrence which would issue nonnegotiable warehouse receipts representing these goods and deliver them to the Bank to be held as security for the loan. The warehousing agreement provided that Lawrence could, when the total value of the commodities exceeded the 125% value, release the excess, subject to restrictions to be hereinafter discussed.

The Schedule of Transactions indicates that payments were made promptly from February until July of 1962 with the possible and immaterial exception of April where the payment seems to have been one day late. By mid-August, however, something was clearly wrong with the business relationship. To view the facts most favorably to the defendants again, on August 14th, two days before the August payment was due, Lawrence, at the direction of the Bank, refused to make further merchandise deliveries to Tri-States. Earlier on that date, according to uncontroverted evidence, Tri-States had attempted to remove merchandise from the warehouse in order to return it to manufacturers for credit. This merchandise was subject to nonnegotiable warehouse receipts held by the Bank as collateral. Upon being advised of this situation by Lawrence employees, the Bank instructed Lawrence to stop releasing merchandise to Tri-States until the Bank had straightened the matter out with Tri-States. This was communicated to Tri-States which refused to continue its business if it was not allowed to make these shipments. The Bank did not agree to these terms and the business closed.

The net result was Tri-States' default on the August note payment and the filing of a voluntary bankruptcy petition on September 10, 1962. From this proceeding the United States was able to realize a substantial recovery which reduced the amount of its present claim against the guarantors to $32,888.12 plus interest. ·

By the terms of the original guarantee, the defendants agreed to give the Bank "full power, in its uncontrolled discretion and without notice to * * * (them), but subject to the provisions of any agreement between the debtor * * * and the Bank at the time in force to deal in any manner with the liabilities and the collateral * * *." The question to be resolved on this motion, therefore, is the right of the bank to pursue the course of action outlined above under the terms of the original note and warehousing agreement.

The warehousing agreement provides that the warehouseman, Lawrence, was to have "actual and exclusive possession of all (pledged) commodities." However, Lawrence was authorized to deliver pledged collateral in its hands to Tri-States where the value of the pledged commodities exceeded 125% of the certified amount of the indebtedness. The Bank, however, explicitly reserved the right "to withdraw and cancel, at any time the authority * * * given to deliver" the collateral to Tri-States upon written notice to Lawrence.

Defendants argue here that there is an implied limitation upon the right of the Bank to withdraw the warehouseman's authority to make these deliveries. In effect, defendants would restrict the Bank in the exercise of this right to situations where the borrower is in actual default. However, the clear language of the agreement permits no such broad-gauged restriction. The purpose of the reservation of control seems quite clear. The Bank, by retaining final control of the collateral sought to protect itself from a number of hazards other than default. As the Fourth Circuit Court of Appeals has noted in a very similar situation, the Bank's control of the collateral is a hedge against market fluctuations in the value of the collateral. See United States v. Houff, 312 F.2d 6, 9 (4th Cir. 1962). Similarly, control protects the Bank from the debtor's fast dealing with the inventory. In the present situation there is no allegation that the Bank operated arbitrarily in stopping these deliveries. There is no suggestion that the Bank acted from other than its own sound business judgment. In the absence of such an allegation, even though the debtor was not technically in default when the action was taken, these charges could constitute no defense to the debtor. Therefore, as there has been no breach of any agreement with Tri-States regarding the collateral there is no defense available to the guarantors on these facts. Summary judgment is hereby awarded the plaintiff.